The prisoner was indicted under tbe act of 1736, 7, fPub. Laws, 147,) for forging a note of tbe Bank of the Slate of South Carolina, and also, for “disposing and putting away” a bill of the Bank of the State of South Carolina, as and for a true note. Upon the trial he! was convicted, and- now moves in arrest of judgment and for a new trial:
In arrest; because there was no evidence of the forgeryf and the verdict therefore must relate to the second count, which is defective, in as miich as it does not state any offence against the act. The words used in the second count of the indictment, are, that the prisoner, “did dispose of and put away the said note, as and for a true note.”
No rule is better established, than that the offence must be stated in the indictment with strict technical accuracy, and it must he obvious that this rule canot be complied with, by using any other words than those used in. the. statute. The words of the act, are “did utter and publish as true,” which are more general and comprehensive than “dispose and put away.” Mr. Chitty says, in treating on this subject, (1st. Hoi. p. 286,) “it is in general necessary, not only to set forth in tbe record all the circumstances which make up the statutable definition of the of-fence, but also to pursue the precise and technical language in which they are expressed; as in rape, the word ravish must be used and in an indictment under the statute for perjury, the word wilful must be used; although in an indictment for the same offence at the common law, it is not necessary.” And he is supported in this position by Foster, 220, 304, 2. Hall, 170, 2. Leach, 1107, Hawkins, 62, chap. 25; and a number of other *60 authorities. Mr. Chitty’s language is, “it is in general necessary.’* But on examination, it will be found that die exceptions to the rule are of a doubtful character and of ancient date, and for the most part refer to a description of offenders and not offences. He concludes however, by remarking “that at all events, in every case, it is advisable to attend with the greatest nicety to. the words contained in act, for no others can be so proper to describe the crime. The exceptions, if an}', are doubtful, and the broad principle, which renders a strict adherence essential, is supported by too strong a number of decisions to be shaken.
Here the case might be disposed of, but as the grounds for new trial are important, and some of them unsettled by any cases which are considered authority, and as the prisoner may be again indicted, I shall consider them in their order.
1st. Because the best evidence of the bills being a forgery, was not produced; asaproper officer of the bank, could havetesti-fie.d to that fact with more certainty than any ordinary citizen.
The forgery was alledged to have been committed by altering a genuine two dollar bill of the bank of the State of South Carolina, into a bill purporting to be a fifty dollar bill; and the presiding judge reports, that none óf the officers of the bank, gave evidence; That/the best evidence which the nature of the case admits, shall be produced, is not only the first, but one of the best, and best established rules of evidence; and it certainly camiot be applied with more force in any case than in a case of life and death. The question then will be, whether any individual, can be as Capable of proving a bank note to be forged, as one of the officer’s who is conversant with the hand writing of hll the officers and who knows all the various, devices and private marks affixed to the bills. When it is recollected how easily a band writing may be imitated and how difficult it is even for the person whose writing is imitated, to say whether it be his writing or not; it must be admitted that any additional circumstance of devices or'private marks, which would go to establish the forgery, would be much more satisfactory than the mere proof of the falsity of the writing.
But it was contended on the part of the state, that the production of a bank officer, was never required, and indeed could. tffit be, because he would not be a Competent witness..
*61 It will be admitted that the authorities appear to differ on this point; but it is conceived that the apparent difference can easily be accounted for and reconciled. Where the indictment is for forging anote of a private individual, he cannot of course be admitted as a witness, and in such case, it has been admitted (ex necessitate) to disprove his hand writing by others. But' in the case of the forgery of the note of an incorporated bank, in which case the officer has no private interest and no private responsibility, it has been long settled, that any officer of the bank may be a witness, and that some one who is competent to prove the forgery, by all the means by which it may be dctected4 must be produced. In the case of the King, vs. Ab. Newland, this point was settled so long ago as 1784, 1 Leach, 350; and in the case of Dennis M'Guire, the prisoner was convicted without disproving the hand writing of the cashier. The forgery was established by evidence which shewed that the instrument was false in all its parts; in the texture of the paper; the water' mark; the engraving; the ink, and the written date of the year; being altogether proved to be such as the bank never made or issued. 2 East’s Pleas of the Crown, 1002: nor can it be doubted that such evidence would be abundantly more satisfactory, even by an inferior officer of a bank, than disproving the hand writing of the maker of a note.
The second ground for new trial is; because the court permitted evidence to be given to the jury of the fact of the prisoner’s having had other bills in his possession, supposed to be forged. On this ground, the court concur with the presiding judge. The question was, whether the prisoner passed the bill, knowing it to be counterfeit. Any circumstances which went to shew this knowledge, are clearly admissible. What effect the testimony is to produce, must be' left to the jury, and would necessarily depend upon the degree of certainty in the evidence. How is this fact ever to be proven, but by circumstances? And that circumstances can tend more strongly to prove that a man knew a bill to be forged, than his having other bills of a similar appearance (to the one proved to be a forgery) in his possession? It is said that it is taking the prisoner by surprise; that it is allowing proof of his having committed one crime, to be given in evidence on the charge of another, But this is certainly a mistake)} view *62 of the subject; for it is no crime to have a forged bill in due's-possession, although it may become a crime to pass it, after it has been suspected. Nor cán it operate as a surprise; for knowing that he had the possession of such other bills, the prisoner might and ought to be prepared to do away the effect of such possession, if it is in his pouter.
But let it be admitted that it is a. crime, yet if the proof of it has a tendency to support the issue, in the case before the court, it is admissible. It has been determined, as to this- very ©Hence, that proof of a man’s having- passed other forged notes, may be given in evidence. In “ The King, vs. Leach, Wylie, and others; 4 Bos. & Puller, 92. This was the unanimous opinion of the court. If, on a charge of horse stealing, an attempt should be made to prove that the accused had, on some Other occason, stolen a horse, such evidence would be inadmissible; because, it would have no tendency to support the issue; the acts are entirely independent of and unconnected with each ether.
The third ground for new tidal is, because the cour t permitted a witness to give evidence against the prisoner, although he himself admitted he did not believe in a future state of rewards- and punishments. The rule on this subject is well settled. If one called as a witness, does not believe m God, and a future state of rewards and punishments, he cannot be sworn; for there is no sanction to such an one. An oath is an appeal to God for the truth of what is said; and it is supposed that one who believes in God, and knows his attributes, will not venture to- invoke his wrath, by false swearing. But where is the security,. if there is no belief? In Nally, p. 9G, it is said, where the objection to competency is grounded on the infidelity ©f the person produced to he sworn, the proper question to he asked, is not, whether he believes in Jesus-Christ, or in the Holy Gospels of God; but, whether he believes in God, and a future state of rewards and punishments; and it will ho found to be so stated, substantially, in Peake,.Phillips, and all the other writers- on evidence. It was argued that the rule must be considered as. abrogated, by that part of the constitution which guarantees the liberty of conscience. I have always regarded tlrat as a wise provision in the constitution; and shall *63 never believe that it was intended to banish all religion; nor can I permit myself to enter seriously into any arguments on a question which I most-earnestly hope will never be seriously entertained in these United States.
Richardson, Justice, concurred.